COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys, Petty, Beales, Alston, McCullough, Chafin,
           Decker, O'Brien, Russell and AtLee
Argued at Richmond, Virginia

LADAWN SHRIEVES KING

                                                              OPINION BY
v.       Record No. 1684-13-4                        CHIEF JUDGE GLEN A. HUFF
                                                             APRIL 7, 2015

COMMONWEALTH OF VIRGINIA


                           UPON REHEARING EN BANC

             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Brett A. Kassabian, Judge

         Amy L. Wilson (Amy L. Wilson, PLC, on briefs), for appellant.

         Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
         Attorney General, on brief), for appellee.


     LaDawn Shrieves King ("appellant") appeals her convictions for malicious wounding, in

violation of Code § 18.2-51, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1.  Following a jury trial in the Circuit Court of Fairfax County ("trial court"),

appellant was sentenced to a total of eight years' incarceration in the Virginia Department of

Corrections.  On appeal, appellant contends that the trial court erred by failing to properly

instruct the jury on the defense of accident.  For the following reasons, this Court reverses

appellant's convictions and remands this matter to the trial court for a new trial, at the discretion

of the Commonwealth.

                                 I.  BACKGROUND

     "When reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction."  Commonwealth v.

Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) (citing Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991)). So viewed, the evidence is as follows.

At trial, the Commonwealth and appellant presented two different accounts of the events that transpired. Dwayne King ("King"), appellant's husband, testified that he and appellant had been discussing divorce for a year and a half. On the evening of November 20, 2012, King was rubbing appellant's head to provide relief for appellant's migraine. Appellant fell asleep on King's lap and, shortly thereafter, King went to sleep on the other couch in the living room. King next remembered "waking up to a gunshot." At first, King did not realize he had been shot in the right forearm, but he noticed appellant "standing on the other side of the couch" with a "gun in [her] hand." King reached for his cell phone, but it was no longer in the location he had left it. Appellant "immediately ran through the kitchen," and King followed. Upon entering the kitchen, King seized the house phone, "locked [himself] into the bathroom on the main level," and called 911. At the same moment, appellant ran upstairs. While King was on the phone, he heard appellant "come down the stairs" and the front door slam. Shortly thereafter, King exited the bathroom and "saw that [appellant's] vehicle was gone."

Appellant testified that on November 20, 2012, she and King were "[i]n over our heads in a lot of ways."[1] Because of this, appellant decided she "didn't want to live anymore" and was going to kill herself using her firearm. Next, appellant explained that she loaded her firearm and took King's phone so she could leave a message for him. Afterwards, appellant went downstairs into the kitchen and sent her son a text message saying she loved him. According to appellant, she then put the phone down and saw King standing in front of her. King then reached for the firearm in

---

[1] Appellant stated that she and King were struggling "financially, emotionally, just in terms of dealing with [their] children." Appellant indicated she "felt like [she] was worthless, not performing up to [her] standards."

appellant's right hand and attempted to pull it away. During the struggle, the firearm discharged and wounded King in the right forearm.

Unaware that King had been injured, appellant "put the gun to [her] head" and attempted suicide, however, the firearm failed to discharge. Next, appellant immediately ran up the stairs, locked herself in a bathroom, and attempted suicide again. After the firearm failed to discharge a second time, appellant grew fearful that the police would arrive and take her to a mental institution. Consequently, appellant hid the firearm in the upstairs linen closet, ran to her vehicle, and drove away. At the hospital, King was examined by Dr. Michael Pitta ("Pitta") who indicated in medical records that King "was shot by his girlfriend accidentally in his right forearm." Pitta did not testify at trial.

At trial, the jury was given instructions defining malicious wounding[2] and malice.[3] Instruction 6, in pertinent part, instructed, "You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed." Appellant relied on an accident theory in her defense and proffered a modified model jury instruction ("Instruction L") on accident. The instruction stated:

> Where the defense is that malicious wounding was an accident, the
> defendant is not required to prove this fact. The burden is on the

---

[2] Instruction No. 4, in relevant part, stated:

> The defendant is charged with the crime of malicious wounding. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot Dwayne King; and
>
> (2) That such shooting was with intent to kill or permanently maim, disfigure or disable    Dwayne King; and
>
> (3) That the act was done with malice.

[3] Instruction B, in relevant part, defined malice as "that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification . . . ."

Commonwealth to prove beyond a reasonable doubt that the malicious wounding was not accidental. If after considering all the evidence you have a reasonable doubt whether the malicious wounding was accidental or intentional, then you shall find the defendant not guilty.

The trial court rejected the instruction explaining, "My basis for denying L is that I think the other instructions adequately instruct the jury as to the fact that it has to be an intentional act, whether or not it is unlawful wounding, a malicious wounding or assault."

During deliberations the jury asked, in writing, two questions. The first question was, "If a weapon were discharged during a struggle or accidentally, would this constitute a shooting with intent to kill, as stated in element two of malicious wounding?" The second jury question was, "What is the legal definition of an unlawful wounding?" Over the objection of defense counsel the trial court responded to the jury's questions by stating, "You must rely upon the instructions previously provided and give the words in each of the instructions their plain and ordinary meaning."

After further deliberations the jury returned its verdict finding appellant guilty of malicious wounding and use of a firearm in the commission of a felony. Appellant appealed to this Court and, by memorandum opinion, a panel reversed and remanded. 2014 Va. App. LEXIS 356 (Va. Ct. App. Oct. 28, 2014). Upon motion of the Commonwealth, rehearing *en banc* was granted thereby vacating the panel decision and staying the Court's mandate.

## II. STANDARD OF REVIEW

"As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009) (citing Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008)). The trial court's "broad discretion in giving or denying instructions requested" is reviewed for an abuse of discretion. Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778

(2003) (*en banc*). On appeal, this Court's "'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

"'A defendant is entitled to have the jury instructed only on those theories of the case that are supported by [more than a scintilla of] evidence.'" Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990) (quoting Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986)). "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993)). "If a proffered instruction finds any support in credible evidence," however, "its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) (citing Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947)).

Additionally, "[w]here the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge *must* instruct the jury as to both theories." Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991) (emphasis added) (citing Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990)). Phrased differently, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge *may not refuse to grant a proper, proffered instruction*." Id. (emphasis added). Consequently, "the trial court must instruct on both theories to guide a jury in their deliberations as to the law applicable to the case, depending upon how the jury decides the facts." Id. (citing Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986)). Parties are not

entitled, however, to duplicative or repetitive instructions covering the same principle of law. Remington v. Commonwealth, 262 Va. 333, 349, 551 S.E.2d 620, 631 (2001); see also Bagley v. Weaver, 211 Va. 779, 783, 180 S.E.2d 686, 689 (1971) ("[W]e take the opportunity to condemn the multiplication of instructions and the requesting and granting of those that are repetitious. Such action can only confuse and mislead the jury and tends to provoke error.").

### III. ANALYSIS

On appeal, appellant contends that the trial court erred by failing to properly instruct the jury on accident. Specifically, appellant contends that there was sufficient evidence in the record supporting appellant's accident theory, the proffered instruction was a proper statement of the law, and, therefore, her proposed accident instruction should have been given.

During the *en banc* oral argument, the Commonwealth conceded that appellant's accident defense was supported by more than a scintilla of the evidence. While this Court is not bound by a party's concessions of law, Crawford v. Commonwealth, 55 Va. App. 457, 481, 686 S.E.2d 557, 569 (2009), this Court holds that more than a scintilla of the evidence, when "view[ed] . . . in the light most favorable to the proponent of the instruction," Cooper, 277 Va. at 381, 673 S.E.2d at 187, supported appellant's proffered instruction. Appellant's testimony indicated that she planned to commit suicide on the night of the incident, but King woke up before she could do so. According to appellant, King attempted to disarm appellant; a struggle ensued. During the struggle, King reached for appellant's right arm, which held the firearm, the firearm accidentally discharged, and King was wounded. This testimony was corroborated by Pitta's medical records, which indicated that King was "accidentally" shot in his right forearm. This evidence, which would support appellant's accident theory if believed, constitutes more than a mere scintilla.

- 6 -

Notwithstanding, the Commonwealth contends that the instructions given at trial fully and fairly covered the principles of law at issue. Specifically, the Commonwealth asserts that because the given instructions on malice required an intentional act, the jury's verdict reflected a decision that appellant's actions were not accidental.

The Commonwealth's argument rests primarily on this Court's decision in Waters v. Commonwealth, 39 Va. App. 72, 80, 569 S.E.2d 763, 767 (2002). In Waters, defendant was charged with first-degree murder after pulling up to a group of men, threatening to kill them, and then shooting the victim. Id. at 75, 569 S.E.2d at 764. At trial, defendant testified that he had only intended to scare the victim and that the shooting was accidental. Id. The trial court refused defendant's proposed jury instruction on accidental killing that stated, "[i]f after considering all the evidence you have a reasonable doubt whether the killing was accidental or intentional, then you shall find the defendant not guilty." Id. at 77-78, 569 S.E.2d at 765. This Court affirmed the trial court on two grounds. Id. at 78-79, 569 S.E.2d at 766. First, we found that the principle of law stated in defendant's instruction had already been covered by previous instructions.[4] Id. Secondly, we held that the proposed instruction improperly stated the law. Specifically, this Court explained that even if the killing had been accidental, it took place during a criminal assault and, therefore, would not have absolved defendant of all offenses included in the charge. Id. at 80, 569 S.E.2d at 767. The opinion explained that "even if the killing had been an accident . . . it is clear from Waters' own testimony that the killing occurred in the course of his commission of a misdemeanor. An accidental killing committed in the course of an unlawful, nonfelonious act constitutes involuntary manslaughter." Id. As such, the "proffered

---

[4] Defendant's proposed jury instruction would have correctly informed the jury that the Commonwealth bore the burden of proving the killing was not an accident. Id. at 78-79, 569 S.E.2d at 766. This Court determined that other instructions sufficiently informed the jury of the Commonwealth's burden. Id. at 79, 569 S.E.2d at 766.

jury instruction, which required an outright acquittal if the jury had a reasonable doubt as to whether the killing was intentional, was improper under the facts of this case." Id. This Court therefore held that because the jury instruction improperly stated the law, the trial court correctly refused to grant it.[5] Id.

In contrast to this Court's holding in Waters, the Supreme Court has held that "[w]here the evidence warrants, an accused is entitled to an instruction presenting his theory of accidental killing as a defense." Martin v. Commonwealth, 218 Va. 4, 6, 235 S.E.2d 304, 305 (1977) (per curiam). In Martin, the defendant was charged with second-degree murder but raised accident as a defense. Id. at 4, 235 S.E.2d at 304. The defendant's accident theory was supported by the evidence, and the defendant proposed an instruction[6] regarding accident and the burden of proof. Id. at 6, 235 S.E.2d at 305. Like Waters, the trial court rejected the instruction on the ground that other instructions adequately covered the principles of law set forth in the proposed instruction. Id. The Supreme Court reversed,[7] however, explaining that the "accused is entitled to an

_____

[5] Unlike Waters, the case at bar presented no other charges or instructions against appellant that would have survived a jury's verdict based on a finding of accident. Therefore, the proposed jury instruction on accident was a correct statement of the law, unlike in Waters.

[6] The proposed instruction read,

> Where, as in the case at bar, the defense is that the killing was an accident, the defendant is not required to prove this fact, beyond a reasonable doubt, or by a preponderance of the evidence, but the burden is upon the Commonwealth to prove beyond a reasonable doubt that said killing was not accidental; therefore, if after hearing all the evidence, you have a reasonable doubt whether said killing was accidental or that it was intentional, then you should find the defendant . . . not guilty.

Id. at 6, 235 S.E.2d at 305.

[7] In reversing the trial court, the Commonwealth's argument that "the substance of the instruction was covered by other instructions given to the jury," was specifically rejected. The

- 8 -

instruction presenting his theory [of the case]." Id. (citing Jones v. Commonwealth, 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954)). The Supreme Court held that "[i]n none of the instructions granted by the trial court . . . was the jury told that the burden was upon the Commonwealth to prove the killing was not accidental and that the jury should acquit the defendant if it entertained a reasonable doubt whether the death was accidental or intentional." Id. at 6-7, 235 S.E.2d at 305. The Supreme Court held that "although the jury may have rejected the theory of accidental killing by finding defendant guilty of murder, because this finding may have resulted from the mistaken belief that the burden was upon the defendant to prove the killing was accidental, the error was prejudicial." Id. at 7, 235 S.E.2d at 305. While Martin dealt with a homicide case, entitlement to an instruction on a defendant's theory of defense, when supported by evidence, is not restricted to homicide cases. See, e.g., Bryant v. Commonwealth, 216 Va. 390, 219 S.E.2d 669 (1975) (defendant accused of rape defending on theory of consent was entitled to an instruction that "informed the jury that if the act of intercourse was consensual then there could not be a conviction").

In keeping with the analysis in Martin, this Court holds in the present case that appellant was entitled to her requested finding instruction on the defense of "accident," because it was supported by more than a scintilla of the evidence and would have legally entitled her to acquittal under the circumstances if believed by the jury. Denying an instruction on a defendant's theory of defense, if supported by more than a scintilla of the evidence, creates the risk of jury confusion and misunderstanding, especially when the jury has not otherwise been instructed that it is the Commonwealth's burden to disprove the defendant's theory beyond a reasonable doubt.

---

unsuccessful position of the Commonwealth had been that the defense theory was adequately covered by instructions "that the Commonwealth must prove beyond a reasonable doubt every material and necessary element of the offense charged . . . [and] the defendant is presumed innocent."

See Martin, 218 Va. at 7, 235 S.E.2d at 305. In such circumstances, therefore, a trial court abuses its discretion by denying a finding instruction on the defense's theory of the case.

As applied to the case at bar, the risk of juror confusion would be heightened if a jury were left to discern the legal principle of "accident" by negative inference from the finding instruction covering the elements of the offense. This Court's decision in Waters, 39 Va. App. 72, 569 S.E.2d 763, is therefore overruled to the extent that it is inconsistent with this Court's holding herein.

"[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty [to properly] instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). From a review of the record, it is apparent that the principle of law covering "accident" was vital to the appellant in this case, was supported by more than a scintilla of the evidence, and was necessary for the jury's understanding of the principles of law that were to govern their deliberations. Accordingly, appellant was entitled to have a properly stated instruction given on her theory of the case, without the need to rely solely on a negative implication arising from the Commonwealth's proffered instructions on the law of malice. See Martin, 218 Va. at 7, 235 S.E.2d at 305 ("[A]lthough the jury may have rejected the theory of accidental killing by finding defendant guilty of murder, because this finding may have resulted from the mistaken belief that the burden was upon the defendant to prove the killing was accidental, the error was prejudicial.").

## IV. CONCLUSION

Based on the foregoing, this Court finds that the trial court erred by failing to properly instruct the jury on accident and remands the case to the trial court for a new trial, if the Commonwealth be so advised.

Reversed and remanded.

- 10 -

Humphreys, J., with whom Petty and AtLee, JJ., join, concurring in the judgment.

> [I]t [is] the most sacred constitutional right of every party accused
> of a crime, that the jury should respond as to the facts, and the
> court as to the law. It is the duty of the court to instruct the jury as
> to the law; and it is the duty of the jury to follow the law, as it is
> laid down by the court.

United States v. Battiste, 2 Sumn. 240, 24 F. Cas. 1042, 1043 (No. 14,545) (CC Mass. 1835).

The Anglo-American right to a trial by jury is now more than seven centuries old and as enshrined in the Sixth Amendment, our Constitution guarantees that such a trial must be a fair one. Juries are the sole judges of what the facts in a case are but they are lay men and women who are expected to digest, understand, and apply legal principles that took the judge and lawyers involved in the case years of study and education to understand. Those legal principles are presented to jurors in the form of instructions that, however correct a statement of law they may be, are often intricate, contradictory, and confusing from a juror's point of view. Although this may necessarily be the case because of the complexity of the legal issues involved, trial courts ought not exacerbate any confusion by denying a defendant a clear and correct instruction that specifically explains the law with respect to a legally recognized defense theory of innocence or mitigation of the offense charged.

I write separately only because the majority opinion may be fairly read to suggest that this principle only applies to the defense of "accident," a limitation that, in my view, is inconsistent with Virginia jurisprudence. This lack of clarity in the majority opinion may result in unnecessary confusion when trial courts are confronted with a similar situation involving a defense theory other than "accident." Furthermore, contrary to the analysis of the majority, I believe the starting point for the analytical resolution of the assignment of error in this case should be the general law applicable to *all* jury instructions rather than just those cases in which the defense of "accident" is advanced.

- 11 -

As the majority acknowledges, "[a] defendant is entitled to have the jury instructed *only* on those theories of the case that are supported by evidence." Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (emphasis added). But implicit in that holding is the converse affirmative right to an instruction on a theory of innocence if more than a scintilla of evidence has been presented to support such theory. Id. Particularly, "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty [to properly] instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). "If there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990).

Relying on well-settled Virginia law, the majority correctly holds that appellant was entitled to a properly stated instruction on her "accident" theory of defense. As the majority notes, it is not sufficient that the Commonwealth's proffered instructions may allow argument that the evidence supports a negative inference that may establish the defendant's chosen theory of defense. In my view, it is axiomatic that a defendant is entitled, as a matter of right, to a jury instruction that affirmatively states the law with respect to the theory of defense, so long as the defense is recognized by the law, is supported by more than a scintilla of evidence, and the proposed instruction correctly states the law.

In Bryant v. Commonwealth, 216 Va. 390, 393, 219 S.E.2d 669, 671 (1975), our Supreme Court held that a jury instruction based on consent was "crucial to [the appellant's] defense," against a rape charge, reasoning that it could not find that "the instructions granted by the [trial] court sufficiently informed the jury that if the act of intercourse was consensual there could not be a conviction." This Court reached the same conclusion in Mery v. Commonwealth,

12 Va. App. 821, 407 S.E.2d 18 (1991), a case that preceded <u>Waters</u>, that involved a similarly

affirmative consent instruction in a rape case. We held that,

> [N]one of the jury instructions cited by the Commonwealth
> specifically deals with the issue of consent. Rather, they address
> the subject only by inference. Those instructions specifically
> address the issues of force, resistance, and the overcoming of the
> prosecutrix's will. We find that their inferential treatment of the
> principle of consent did not adequately instruct the jury on a
> subject that was both vital to [the appellant's] defense and
> sufficiently supported by the evidence to make it a jury issue.

<u>Id.</u> at 825, 407 S.E.2d at 21. Likewise, in <u>Delacruz,</u> this Court held that the trial court erred in

refusing to offer an instruction on self-defense for a brandishing a firearm charge, reasoning, "it

cannot be fairly said that either instruction fully informed the jury of the right of self[-]defense or

offered the jury the option of finding [the appellant] not guilty." 11 Va. App. at 339, 398 S.E.2d

at 105-06.

Applying this principle to a possession of a firearm by a felon case, this Court held,

"because necessity was appellant's 'sole defense' to the charged crime and appellant gave

testimony supporting that defense, the trial court had an affirmative duty to give a corrected

instruction to the jury." <u>Humphrey v. Commonwealth</u>, 37 Va. App. 36, 51, 553 S.E.2d 546, 553

(2001). This proposition has also been extended to situations where a defendant's theory of

defense negates an element of an offense, such that the defendant could be convicted of a

lesser-included offense. For example, in <u>Miller v. Commonwealth</u>, 5 Va. App. 22, 24, 359

S.E.2d 841, 842 (1987), we held "[i]f there is any evidence that would support a conviction for

the lesser included offense, the trial court must, upon request of counsel, instruct the jury as to

the lesser included offense." Finding more than a scintilla of evidence to support defendant's

heat of passion defense to his charge of malicious wounding, we found the trial court erred in

failing to offer an instruction for unlawful wounding. <u>Id.</u> at 25, 359 S.E.2d at 843.

- 13 -

Finally, in Cooper v. Commonwealth, 277 Va. 377, 673 S.E.2d 185 (2009),[8] an instruction similar to the one in this case, but relating to the defense of alibi, was proposed. Our Supreme Court discussed its own inconsistent jurisprudence regarding whether the principle of law was adequately covered in other instructions and concluded,

> Yet, as a review of our decisions will reveal, alibi instructions have been granted in some cases and refused in others when no discernible difference is apparent. Eliminating judicial discretion will promote uniformity where uniformity is desirable, and it is desirable in this instance. Hereafter, the rule will be: *grant an* alibi *instruction when* [*a scintilla of evidence*] *is present, refuse when the evidence is absent.*

Id. at 385-86, 673 S.E.2d at 190 (emphasis added).

Thus, the law in this regard is not unique to the defense of "accident," as applied in Martin, and logically extends to all other legally cognizable defenses and we should not suggest otherwise. If a negative inference as to a criminal defendant's defense of "accident" in a malicious wounding case is insufficient, a negative inference is necessarily insufficient as to other defenses, to a whole host of criminal charges, such as those already noted.[9] For these

---

[8] Cooper is cited in the majority opinion but only for the standard of review and the definition of "a scintilla of evidence."

[9] Other jurisdictions have similarly applied this principle to legally recognized defenses beyond "accident." See e.g., People v. Nunez, 841 P.2d 261, 264 (Colo. 1992) (holding an instruction embodying a defendant's theory of the case must be given if the record contains any evidence to support the theory); State v. Fuller, 506 A.2d 556, 559 (Conn. 1986) (holding "[i]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction"); State v. Weller, 590 So. 2d 923, 927 (Fla. 1991) (finding a defendant is entitled to an instruction as to any valid defense supported by evidence or testimony in the case); State v. Taylor, 307 P.3d 1142, 1149 (Haw. 2013) (holding a defendant is entitled to a requested jury instruction on a defense when he presents some evidence going to the defense); Bouwkamp v. State, 833 P.2d 486, 490 (Wyo. 1992) (finding that due process considerations entitle criminal defendants to affirmatively stated theory of the case instructions when the instruction sufficiently informs the court of the defendant's theory, is supported by competent evidence, and the offered instruction presents a defense recognized by statute or case law).

reasons, I also agree with the majority that Waters should be overruled to the extent that it conflicts with this principle.

To be clear, I emphatically do not suggest that a defendant has the right to propound his particular version of a jury instruction resulting in duplicative instructions, or that a correct instruction of the law regarding a theory of defense propounded by the Commonwealth or the trial court *sua sponte* would not suffice. Within the principles outlined, the trial court has the discretion to determine which instructions to grant or deny from whatever source, provided more than a scintilla of evidence supports a defendant's legally recognized theory of defense. The defendant's right in this regard has been honored if a jury instruction has been given that accurately and affirmatively states the law regarding *any* such cognizable defense.

Therefore, applying what I believe is the more logical analysis outlined above, I would hold that because every criminal defendant is entitled to a jury instruction that affirmatively states the theory of any legally recognized defense, if supported by more than a scintilla of evidence, and because "accident" is such a defense since if accepted by the jury, proof of such defense would negate an element of the offense, or otherwise entitle the defendant to an acquittal or mitigation of the charge and further, because the record in this case clearly establishes that all of these elements were present, I join my colleagues in reversing the judgment below in this case and remanding it for a new trial if the Commonwealth is so advised.

Beales, J., with whom Russell, J., joins, concurring.

I join the majority opinion to the extent it holds that this case is controlled by <u>Martin v.</u> <u>Commonwealth</u>, 218 Va. 4, 235 S.E.2d 304 (1977) (per curiam). I write separately to emphasize that the Supreme Court's decision in <u>Martin</u> is the reason why we must reverse the trial court in this case. The present appeal is essentially <u>Martin</u> revisited. In <u>Martin</u>, as in this case, the defendant requested a jury instruction on "accident." The proposed instruction in <u>Martin</u>, as with the proposed instruction in this case, constituted a correct statement of the law and was supported by more than a scintilla of evidence at trial. The Commonwealth advanced the same argument in <u>Martin</u> and in this case – that other instructions adequately covered the defense theory of accident. In both this case and in <u>Martin</u>, the proposed accident instruction was denied. See <u>id.</u> at 6, 235 S.E.2d at 305.

<u>Martin</u> is materially indistinguishable from this case, and, therefore, we *must* reach the same result as the Supreme Court in <u>Martin</u> because, of course, Supreme Court decisions are binding on this Court. There, the Supreme Court held,

> In none of the instructions granted by the trial court, however, was the jury told that the burden was upon the Commonwealth to prove the killing was not accidental and that the jury should acquit the defendant if it entertained a reasonable doubt whether the death was accidental or intentional. It was error to refuse an instruction embodying these propositions.

<u>Id.</u> at 6-7, 235 S.E.2d at 305. The Supreme Court emphasized the effect that the denial of the proposed accident instruction potentially had on the jury's understanding of the Commonwealth's burden of proof, adding, "And, although the jury may have rejected the theory of accidental killing by finding the defendant guilty of murder, because this finding may have resulted from the mistaken belief that the burden was upon the defendant to prove the killing was accidental, the error was prejudicial." <u>Id.</u> at 7, 235 S.E.2d at 305. Likewise, the jury in the case

- 16 -

before us today was not instructed that the Commonwealth had the burden of proving that the shooting was not accidental. Therefore, the instructions given to the jury in this case were inadequate for precisely the same reason that the Supreme Court identified in <u>Martin</u>.

Accordingly, the Supreme Court's decision in <u>Martin</u> absolutely controls the result in this case. Our analysis does not require any further explanation than that the Supreme Court's decision in <u>Martin</u> mandates reversal here. On that narrow basis alone, I concur.[10]

---

[10] Consequently, I agree that the portion of the panel decision in <u>Waters v. Commonwealth</u>, 39 Va. App. 72, 569 S.E.2d 763 (2002), that is inconsistent with the Supreme Court's decision in <u>Martin</u> and with the decision in this case today must be overruled. In the instant case, unlike in <u>Waters</u>, the Commonwealth conceded at oral argument that an acquittal would have been proper if the jury had accepted appellant's defense of accident, given that there was no remaining offense to convict appellant of on which the jury had been instructed. This case does not affect the alternative holding in <u>Waters</u>.

UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia

LADAWN SHRIEVES KING

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1684-13-4                    JUDGE GLEN A. HUFF
                                                    OCTOBER 28, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Amy L. Wilson (Amy L. Wilson, PLC, on briefs), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

LaDawn Shrieves King ("appellant") appeals her convictions for malicious wounding, in

violation of Code § 18.2-51, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. Following a jury trial in the Circuit Court of Fairfax County ("trial court"),

appellant was sentenced to a total of eight years' incarceration in the Virginia Department of

Corrections. On appeal, appellant contends that the trial court erred by failing to properly

instruct the jury on the defense of accident. For the following reasons, this Court reverses

appellant's convictions and remands this matter to the trial court for a new trial, at the discretion

of the Commonwealth.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

At trial, the Commonwealth and appellant presented two different accounts of the events that transpired. Dwayne King ("King"), appellant's husband, testified that he and appellant had been discussing divorce for a year and a half. On the evening of November 20, 2012, King was rubbing appellant's head to provide relief for appellant's migraine. Appellant fell asleep on King's lap and, shortly thereafter, King went to sleep on the other couch in the living room. King next remembered "waking up to a gunshot." At first, King did not realize he had been shot in the right forearm, but he noticed appellant "standing on the other side of the couch" with a "gun in [her] hand." King reached for his cell phone, but it was no longer in the location he had left it. Appellant "immediately ran through the kitchen," and King followed. Upon entering the kitchen, King seized the house phone, "locked [himself] into the bathroom on the main level," and called 911. At the same moment, appellant ran upstairs. While King was on the phone, he heard appellant "come down the stairs" and the front door slam. Shortly thereafter, King exited the bathroom and "saw that [appellant's] vehicle was gone."

Appellant testified that on November 20, 2012, she and King were "[i]n over our heads in a lot of ways."[1] Because of this, appellant decided she "didn't want to live anymore" and was going to kill herself using her firearm. Next, appellant explained she loaded her firearm and took King's phone so she could leave a message for him. Afterwards, appellant went downstairs into the kitchen and sent her son a text message saying she loved him. According to appellant, she then put the phone down and saw King standing in front of her. King then reached for the firearm in appellant's

---

[1] Appellant stated that she and King were struggling "financially, emotionally, just in terms of dealing with [their] children." Appellant indicated she "felt like [she] was worthless, not performing up to [her] standards."

- 2 -

right hand and attempted to pull it away. During the struggle, the firearm discharged and wounded King in the right forearm.

Unaware that King had been injured, appellant "put the gun to [her] head" and attempted suicide, however, the firearm failed to discharge. Next, appellant immediately ran up the stairs, locked herself in a bathroom, and attempted suicide again. After the firearm failed to discharge again, appellant grew fearful that the police would arrive and take her to a mental institution. Consequently, appellant hid the firearm in the upstairs linen closet, ran to her vehicle, and drove away. At the hospital, King was examined by Dr. Michael Pitta ("Pitta") who indicated in medical records that King "was shot by his girlfriend accidentally in his right forearm." Pitta did not testify at trial.

At trial, the jury was given instructions defining malicious wounding[2] and malice.[3] Appellant relied on an accident theory in her defense and proffered a modified model jury instruction ("Instruction L") on accident. The instruction stated:

> Where the defense is that malicious wounding was an accident, the defendant is not required to prove this fact. The burden is on the Commonwealth to prove beyond a reasonable doubt that the

---

[2] Instruction No. 4, in relevant part, stated:

> The defendant is charged with the crime of malicious wounding. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot Dwayne King; and
>
> (2) That such shooting was with intent to kill or permanently maim, disfigure or disable Dwayne King; and
>
> (3) That the act was done with malice.

[3] Instruction B, in relevant part, defined malice as "that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification . . . ." Instruction 6, in pertinent part, instructed, "You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed."

- 3 -

malicious wounding was not accidental. If after considering all the
evidence you have a reasonable doubt whether the malicious
wounding was accidental or intentional, then you shall find the
defendant not guilty.[4]

The trial court rejected the instruction explaining, "My basis for denying L is that I think the other

instructions adequately instruct the jury as to the fact that it has to be an intentional act, whether or

not it is unlawful wounding, a malicious wounding or assault."

During deliberations the jury asked, in writing, two questions. The first question was, "If a

weapon were discharged during a struggle or accidentally, would this constitute a shooting with

intent to kill, as stated in element two of malicious wounding?" The second jury question was,

"What is the legal definition of an unlawful wounding?" Over the objection of defense counsel the

trial court responded to the jury's questions by stating, "You must rely upon the instructions

previously provided and give the words in each of the instructions their plain and ordinary

meaning."

After further deliberations the jury returned its verdict finding appellant guilty of

malicious wounding and use of a firearm in the commission of a felony. This appeal followed.

II. ANALYSIS

A. Standard of Review

"As a general rule, the matter of granting and denying instructions does rest in the sound

discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187

(2009) (citing Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008)). On

appeal, "[o]ur 'sole responsibility in reviewing [jury instructions] is to see that the law has been

---

[4] Appellant's refused jury instruction is taken from Martin v. Commonwealth, 218 Va. 4,
235 S.E.2d 304 (1977). In Martin, the trial court determined that the refusal to instruct the jury
on accident was error because "[i]n none of the instructions granted by the trial court, however,
was the jury told that the burden was upon the Commonwealth to prove the killing was not
accidental and that the jury should acquit the defendant if it entertained a reasonable doubt
whether the death was accidental or intentional." Id. at 6-7, 235 S.E.2d at 305.

clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). Moreover, "in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." Cooper, 277 Va. at 381, 673 S.E.2d at 187.

Additionally, "an instruction must be supported by more than a scintilla of evidence." Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978) (citing Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975)). "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1992)).

B. Accident Jury Instruction

On appeal, appellant contends that the trial court erred by failing to properly instruct the jury on accident. Specifically, appellant contends that because there was sufficient evidence in the record supporting appellant's accident theory in the case, the proffered instruction was proper and should have been given. The Commonwealth contends that the instructions used at trial fully and fairly covered the principles of law at issue. The Commonwealth asserts that because the instructions on malice required an intentional act, the jury had to conclude appellant's actions were not accidental.

"'A defendant is *entitled* to have the jury instructed only on those theories of the case that are supported by evidence.'" Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990) (emphasis added) (quoting Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 257,

280 (1986)).  "When reviewing jury instructions, an appellate court must ensure that the law has been 'clearly stated' and that the 'instructions cover all issues' fairly raised by the evidence." Mouberry v. Commonwealth, 39 Va. App. 576, 581, 575 S.E.2d 567, 569 (2003) (quoting Tice v. Commonwealth, 38 Va. App. 332, 339, 563 S.E.2d 412, 416 (2002)).  "A trial court should instruct the jury, when requested to do so, 'on all principles of law applicable to the pleadings and the evidence.'"  Id. at 582, 575 S.E.2d at 569 (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)).  Indeed, "[i]f a proffered instruction finds any support in credible evidence, its refusal is reversible error."  McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) (citing Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947)).

"Where the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge must instruct the jury as to *both theories*."  Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991) (emphasis added) (citing Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990)).  Further, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper proffered instruction."  Id.  Consequently, "the trial court must instruct on both theories to guide a jury in their deliberations as to the law applicable to the case, depending upon how the jury decides the facts."  Id. (citing Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986)).  Parties are not entitled, however, to duplicative instructions covering the same principle.  Remington v. Commonwealth, 262 Va. 333, 349, 551 S.E.2d 620, 631 (2001).

"[V]iew[ing] the facts in the light most favorable to the proponent of the instruction," this Court finds that credible evidence supported appellant's proffered instruction.  Cooper, 277 Va. at 381, 673 S.E.2d at 187.  At trial, King testified in support of the prosecution's malicious wounding theory of the case.  Specifically, King indicated that he woke up after being

- 6 -

deliberately shot by appellant. In contrast, appellant offered a strikingly different account of the incident. Appellant's testimony indicated that she planned to commit suicide on the night of the incident; however, King woke before she could complete the act. According to appellant, King attempted to disarm appellant while appellant was sending a goodbye message to their child. During the struggle, King reached for appellant's right arm, which held the firearm, the firearm accidentally discharged, and King was wounded. Moreover, appellant's testimony established that she did not intend to deliberately harm King but wanted to commit suicide.

In the very unique facts of this case and while balancing the relevant standards of review, this defendant was entitled to the instruction at issue. See Cooper, 277 Va. at 381, 673 S.E.2d at 187. Appellant's testimony amounts to "more than a scintilla of evidence." Eaton, 240 Va. at 255, 397 S.E.2d at 297. Additionally, the trial court's response to the jurors' question, "You must rely upon [all of] the instructions previously provided and give the words in each of the instructions their ordinary and plain meaning" is too simplistic given the circumstance presented. Rather, "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). From a review of the record, the principle of law covering "accident" was vital to the appellant in this case.

Accordingly, appellant was entitled to have a properly stated instruction given on her theory of the case, without the need to rely solely on a negative implication arising from the Commonwealth's proffered instructions on the law of malice. As appellant's theory of the case was supported by more than a scintilla of evidence, the trial court committed an error of law in failing to grant appellant's proffered instruction covering her theory of the case. Consequently, this Court finds that the trial court abused its discretion in failing to properly instruct the jury on accident.

## III.  CONCLUSION

Based on the foregoing, this Court finds that the trial court erred by failing to properly instruct the jury on accident and remands the case to the trial court for a new trial, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

UNPUBLISHED

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **9th** *day of* **December, 2014**.

LaDawn Shrieves King,                                                                                               Appellant,

 against          Record No. 1684-13-4
                       Circuit Court No. FE-2013-175

Commonwealth of Virginia,                                                                                        Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On November 7, 2014 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on October 28, 2014, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on October 28, 2014 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of this Court.

The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe

Acrobat Portable Document Format (PDF).[1]


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."